Good morning, and may it please the court, Tom Schlesinger for Appellant Jamonn Lindsey. I'll be addressing the issues in the order briefed, beginning with the insufficiency of the evidence. I wish you would address first, for my benefit anyway, the Antigone and Rivera cases, because that, to me, has a major effect on what we decide to do. I see. All right. Well, let's skip on to that then. That deals with the question of the loss of the peremptory, and the court did ask for supplemental briefing. The position that the appellant takes on that is that there is some discussion in the four corners of the Supreme Court decision of Rivera that we believe distinguishes Lindsey's case from the cases of Antigone and Rivera. Well, look what happened there. He had ten peremptories coming? The defendant had ten, and the government had six. Yeah, but the defendant is your client. That's correct. Were you the trial lawyer? No, I wasn't. So, yeah, they never show up. So the judge is keeping track of the peremptories, huh? The trial lawyer is keeping track of the peremptories. Well, everybody has a chart. I just tried a case in that courtroom, and like all the courts here in the Central District, the clerk gives out a chart and everybody uses it, and there was a chart that everybody used. Everybody's got a chart, yeah. Everybody's supposed to be... Awake and all that. Correct. So then the judge announces that everybody's used up their peremptories, and they're swearing the jury, and the lawyer is sitting there, and he doesn't say anything. Because he thinks he's already used up all ten. Well, whatever it is. So it's a waiver. You say, oh, wait a minute, Your Honor. I've only used up nine. I've got one coming. It would be a waiver under normal circumstances, and then... What's abnormal about this? Well, what's abnormal about this case was the ground rules that were set for jury selection. If you take a look at the statement made by the court at the very beginning of jury selection as to the options that were going to be given to the parties, it's quite confusing. We can sit here and read them in black and white and make some sense of them, but in the heat of the moment of selecting a jury, it's clear from what happened in the whole evolution of jury selection in Lindsay's case that the defense attorney didn't understand what the court was saying. The court didn't understand which option that he had offered to Lindsay was the one that was taken because the defense attorney says, I'm going to take the door number one option, and yet it appears as if through the selection process he's actually doing the second of the two options where it's a use or lose, evidently. And what happens is everything gets confused because there is a challenge for cause of juror number 12, Ms. Steinberg, right after the two challenges for cause are granted as to jurors number 8 and 10, which are never even discussed. Yeah, I looked at that portion of the transcript, and so they're discussing juror number 4, and the attorney then says, well, I didn't quite catch that, but I object to juror 12 for cause, and then the court goes on to discuss juror number 4, and then he doesn't say anything again, so he lets it drop. So it was hard for me, and her testimony had been, I don't like police in essence, so it was hard for me to see how that raised any issue for your client. So if she was prejudiced, it sounded like she was prejudiced in favor of the defendant because she says, I don't like the police. They stopped me. They did these things to me. So I couldn't tell what the issue was. Well, there were two jurors. There was number 8 and number 10, I believe. Right, and that was a different issue where they had both said things that were pro-anti-police, and the court had dismissed them for cause, and you object to that, and we have that in your brief. But then you referenced this juror 12, but she had said the same sort of thing, which was, I don't like the police, and the attorney there didn't follow up on her, so I couldn't see how that related to anything. Well, the way it relates, and actually all of that sort of relates, if I can get to that, but how that relates is the fact that at one point the defense attorney says he challenges number 12 for car, and then they let it go. It dropped. Everybody drops it. They're talking about juror 4 at the time. And the defense counsel doesn't bring it up again. But then at a later juncture, the defense attorney says, Your Honor, the defense is satisfied with the present composition of the 12 that are in the box, which would possibly infer, which we argue does infer, that he was passing on Ms. Steinberg at that point. And therefore, depending on whether he was going with the first option or the second option or some hybrid that was presented to him by the judge when the judge laid out the ground rules for jury selection, that he may have interpreted that statement to mean that he was foregoing one of his preemptory challenges. So he may have gotten all 10 is what you're saying. No, he got nine. But he may have thought under the rules, the options presented to him, that the judge was right. He had already exhausted all of his challenges because of the decision he had made to go with the door number one option. And then the reason why, there's a number of reasons why, getting back to the original question on Rivera and why doesn't Rivera carry the day is the fact that appellant maintains that the way the jury selection process went and the choice, one of two choices that were afforded to the defense made the whole thing arbitrary. I wouldn't necessarily say irrational, but it was certainly arbitrary and confusing to everyone. There was no prejudice to the government because they never got close to using all of their preemptories. They used three, and they had two challenges for cause that were granted. And then, of course, there were the alternates selected, which doesn't even relate to any of this. And so that's why we're saying that this case is distinguishable from Rivera, because within Rivera itself, it says, you know, if it turns out that the rules that are being applied to the jury selection are arbitrary and irrational, and, you know, you look at, go to the thesaurus, I mean, you can find other words that relate to that, confusing, not well established, unclear, as I said, strained, then Rivera doesn't necessarily, isn't necessarily going to apply. There was also discussion in Rivera about the fact that, look, in that Chicago case, the juror that was challenged preemptorily, I mean, was preemptorized, and then they found that there was a gender issue for Batson purposes remained on the jury. Well, there was no prejudice, because there was no showing that any of the jurors were incompetent or biased. And not only that, but the Illinois Supreme Court found that the evidence was overwhelming. Are you suggesting, then, that we apply anigone, and there's automatic reversal? Well, well, the question you asked for supplemental briefing was whether Rivera had essentially abrogated the holding in anigone. And our argument is, is that it doesn't, if it did, that doesn't mean Mr. Lindsay loses the appeal, because of the nature of the ground rules that were set for the jury selection. To answer that question specifically, it appears that Rivera has not completely overruled anigone, in the sense that some of the language that's contained in there concerning arbitrariness and the dicta from the Swain decision that is cited to in anigone still appears to apply when you're talking about a jury selection process which is arbitrary. And so Rivera didn't even touch upon Well, was any objection made to that jury selection? There wasn't, because there was, as I said earlier, it appears from the record that the trial defense counsel thought that the court was right, when in fact the court was not right. And the government here on appeal concedes that Mr. Lindsay only got nine of his ten challenges. And the other problem is Well, it's not uncommon not to use a preemptory challenge. It's not uncommon, but in this instance the record is clear that because of the string of challenges that were made by Mr. Lindsay that he would have used the tenth if he knew he had the opportunity. And that's what we're saying is that under Rule 24, if for some reason it's okay to drop off a challenge, a lot of times defendants get more challenges than what the rule permits. But here we have a situation where the defendant actually got one less challenge than what the rule permits. So if you're saying that there's no harm because of the makeup of the jury in this case to the appellant because of the evidence presented that it didn't matter if he was able to exercise that one preemptory or not, then that would appear to suggest that Rule 24 is just there as a suggestive mode of operation for the court to conduct its jury selection process. Because, and it's true, some states, all states have the right to say there are, nobody's going to get any preemptory challenges. So the federal law is that you get them. So it would appear to me that if there's a rule under the Federal Rules of Criminal Procedure that says the defense gets, at a bare minimum, ten, that the judges should be following its rules that apply to the federal courts. Now, Rivera was a state case. So, and in fact, the Supreme Court said if the state of Illinois decides that there was something wrong and untoward about the way in which the jury was selected in this case, they can decide themselves that there was something that was wrong about it. But we're not going to make that decision here. But this is a federal case. Yeah. You want to save some time? Sure. Thank you. Thank you. You're not waiving your time. You saved it. Thank you. Yeah. Good morning, Your Honors. May it please the Court, Mark Yohalam on behalf of the United States. To dive right into the Enigine Rivera issue, I want to address two things that my learned friend said in his statement. First, that the selection between option one and option two arose in the heat of the moment. That's not the case. In fact, the decision between which approach to use for peremptory challenges took place 12 days before jury selection did. So it wasn't a situation where right before jury selection the judge sprung two confusing approaches and there was a rush to settle on one of them. Second, I actually don't think the two approaches are as confusing or bewildering or irrational as my learned friend suggests. To me, they seem like the two traditional options for how to run peremptory challenges. Either it's a use or lose system or it's a double pass and we see the box system. Now, I concede I don't have that much trial experience, but those are the only two systems that I've seen. And so given that here there was experienced trial counsel on both sides, I find it hard to believe that they would have been completely bewildered by the situation. And the second point I want to respond to is this suggestion that this was arbitrary or irrational in how it was applied. First, I want to home in on exactly what the language in Rivera is, because I think that's significant. What the court in Rivera said is there is no suggestion here. And this is on page 1455 of the opinion. There's no suggestion here that the trial judge repeatedly or deliberately misapplied the law or acted in an arbitrary or irrational manner. It's hard to see here either of those things even being close to the case. The judge certainly did not repeatedly misapply the law. And using a use or lose system is not irrational. It's a sensible way of handling peremptory challenges. Next. So under the use or lose system, if you don't exercise a peremptory challenge, for those who are in the box, you can't come back and excuse one of them later? I think. Preemptorily? I think the use or lose system is that if you pass, you lose the option. You lose one of your peremptory challenges. So if you had ten peremptory challenges and said, you know what, I'm going to pass on this one, then you would have nine to come back. Well, you've got the 12 people in the jury box, right? Yes. And first the judge goes through challenges for cause. And then you come down to whether there's a peremptory challenge to be exercised. And so if you've got 12 people who pass for cause and you can exercise a peremptory challenge, then you don't say to the last one seated, and you don't, then you lose one. Yes. I think the use or lose system is that you get ten chances to exercise a peremptory challenge to any of the jurors seated in the box. That's when they first get in there. No. Under the use or lose approach, as I understand it, as new jurors come in, you can still go back and strike an earlier juror. But if you pass, you've lost one of your ten chances. So if you passed ten times, even though you've never exercised a peremptory challenge, you would be out of them. Under the other approach, the way it would work is that if you passed, you lost the option to challenge any of the jurors who were in the box at the time that you passed. But you didn't lose your peremptory challenge. So there what you, how, here's an example of how it could make a difference. If defense counsel passed six times for peremptory challenges, but each time the government was exercising its peremptory challenge, then under one of the two approaches, defense counsel would only have four peremptory challenges left. But it would be an option to strike any of the jurors in the box. Under the other approach, defense counsel would have all ten challenges left, but could only strike the new jurors who had been seated as a consequence of the government's peremptory challenges. Who dreamed this? Judge Feist was the district court judge in this case. These appear to be the two approaches that he's found work in his court, although he expressed his own preference for the use or lose approach, which I will say is the approach that I've seen most commonly done. And that's the approach where you can choose to strike or not to strike, but whatever you do, you've lost one of your peremptory challenges. And you can always strike any of the jurors in the box, but you only have ten. Do other judges use this, these systems? Definitely I've seen other judges use the ten opportunities system. That is, that a pass counts as a peremptory challenge. It's the system that I've seen. The whole idea is you're not really choosing one or two people. You're choosing a group of people, and that can change. If one person is off, then the dynamics can change, too. Yeah, I understand the concern that the district court here and other district court judges have expressed is that if you don't take away a peremptory challenge when someone passes, then the parties engage in a sort of game where one of them tries to hold back all of his or her challenges until the end and can then sort of do a clean sweep of the entire box. And it creates a degree of sort of sandbagging of the other side. I've never heard of a situation where you've got ten peremptories, you don't exercise any, and all of a sudden you get rid of ten people. I've never heard of that. Let me just do it one at a time. Could I ask you a question again about enigma? Rivera seemed to say states can do what they want to do. Yes, ma'am. We have a federal case. In this particular case, then, do we follow enigma? No, I don't think so, Your Honor. If not, why not? Under Miller v. Gammy, it doesn't need to be the case that the Supreme Court expressly overrules one of this court's precedents for it to be so undermined by that decision that this court should cease to follow its own prior decision. And I think that's what happened here with enigma. Enigma was based on a couple of different rationales. One of those was that there's no practical way to apply harmless error analysis to an error regarding peremptory challenges. A second principle of it was that the Supreme Court in Swain had held that harmless error analysis couldn't be applied to an erroneous denial of a peremptory challenge. And those two premises run throughout the enigma decision. In Rivera, the Supreme Court repudiates both of those. So as to Swain, the court, again, this is on page 1455 of Rivera, says, Rivera relies in part on Swain, which suggested that the denial of the right to exercise peremptory challenges is reversible error without a showing of prejudice. We disavowed this statement in Martinez-Salazar, observing, albeit in dicta, that the oft-quoted language in Swain was not only unnecessary to the decision, but was also founded on a series of our earlier cases decided long before the adoption of the harmless error review. As our recent decisions make clear, we typically designate errors structural only when the error necessarily renders a criminal trial fundamentally unfair. So that undercuts an enigma in two respects. One is that it directly knocks out this Swain language that is the cornerstone, or maybe whatever the equivalent of foundation is to a cornerstone, of this court's reasoning. The second is that in an enigma, this court held that it didn't need to decide whether this was a structural error or not. It held that you could have automatic reversal even when it wasn't structural error. So the Supreme Court has knocked both of those points out. Next, the court says that it is perfectly okay for a state Supreme Court or a state court of appeals to apply harmless error analysis. Now, I completely agree with your point that one is the state system and the other is the federal system. But if, as a practical matter, it was impossible to apply harmless error analysis, then the Supreme Court wouldn't have had that holding. That is, you know, underlying the Niggany decision is that the court would just have to throw its hands up if it had to apply harmless error analysis. And here, the Supreme Court makes clear that there is a way to do harmless error analysis. So how is there a way to do harmless error analysis? Judge Kosinski, then judge, in his dissent says, we either have to say all these errors are harmless or none of them are. Why isn't that correct? Well, I think with respect to my learned friend's point about Rule 24, I think this is a – the two actually dovetail together. So the simplest way to say it would work is that the government will never prevail when it's a preserved error that's reviewed for harmlessness because the government will never be able to show that the error was actually harmless. However, if it's an unpreserved error and is reviewed for plain error, the appellant will never prevail because the appellant will never be able to show prejudice to his substantial rights. I think that is the cleanest and simplest way to preserve Rule 24 to apply both harmless error review and plain error. But I think you could also imagine some circumstances conceivably where harmless error analysis, you know, you could find that it was not harmless if, for example, all of the defendant's perimetry challenges were erroneously denied and they were all close cases where it didn't quite rise to the error of a four-cause challenge, but they were all sort of – you know, each one of these jurors, there's reason to be a little bit uncomfortable about it. So our standard, though, is it's more likely than not or more probable than not that there would have been a different result if it's a non-constitutional harmless error. So even in your example, you'd have to say – how would you show that if they're impartial? Yeah, I guess what I was saying as I now think about it, my example is not particularly apt because that would probably go to establishing plain error by the appellant. For the government to establish that it was harmless, I guess the government would have to show that it was the denial of a single perimetry. Actually, this would be a very good example of where it was harmless, where there was actually no effort to exercise the perimetry challenge. So we don't even know whether – it could well be the case here that defense counsel elected not to exercise the last perimetry challenge because he had already struck everyone he wanted to struck. And in any case, there's no indication that any of the jurors who were impaneled were in any way partial or biased. And so you could say in a case like that that the error was harmless. Here, the court, though, does not have to decide whether to apply harmless error analysis, only whether to apply plain error analysis. I realize that the two are connected because if it's structural error, you wouldn't apply either. But I think applying plain error analysis in this case is actually quite straightforward because there's just no showing of any prejudice. As the court held in Rivera, he got exactly what he's guaranteed, which is an impartial jury. None of the jurors were biased in a way that could be stricken for cause. And so I think there's certainly no plain error, and I think Rivera makes clear that this is not a structural error. I'm not sure why it would be a structural error in, you know, if their language on page 14, if they were basically saying because this is not a right that applies to states, we don't have to consider it at all, they would not have gone through this analysis about what constitutes structural error. So I think looking at what the Supreme Court is saying in Rivera, they're making clear that the loss of a peremptory strike is not the kind of error that is structural, whether it's in the federal or the state system. I realize I'm almost out of time. I don't know if there are any other issues that the court would like me to very briefly address. Thank you very much. You're welcome. I was hoping to also have an opportunity to address the hearsay and prior consistent statement issue. But if you prefer to stay with Rivera, that's fine in the absence of any indication. Otherwise, we'll just continue to talk about Rivera for another moment or two. There's another case that's cited in Enigine. It's Turner. It's an older case. And there's also another, I think it was Judge Ray in the Central District, had said that if the defense counsel indicates that he passes, in other words, to the 12 in the box and that he otherwise accepts the jury's constituted, that I think were the words, that he would have exhausted a peremptory. Now, if this panel decides that Rivera has fully abrogated Enigine, then the relief that was obtained in Turner would also go by the boards as well, because quite clearly what Turner found was what they called a forced waiver, which was an undue restriction on the ability to exercise a peremptory challenge under the federal rule. What counsel suggests is that if the jury that tries the case is otherwise competent and unbiased, there's really no error to consider. Well, he suggested that if the error were preserved, then it would not be harmless. Right. And the problem is that that would, I suppose, render Rule 24 meaningless. Judges could take from such an opinion that they could dispense with it. Now, I'm not sure if that's what we want to do. It seems to me that even though it's not a constitutional right to have peremptory challenges, that the Congress decided that it was, at least as far as federal cases went, the defense should have a minimum of ten peremptories in a case where the punishment was a year or more. So we can do away with Rule 24 if we find that under no circumstances other than a Batson-type challenge, where there is a discriminatory purpose behind the challenge, that there was any other way for anybody to ever object to the way in which the trial court is administering its right of peremptories and the way it conducts its jury selection process. I don't think that that was what was intended by Rivera, because Rivera was dealing with a state court case where the judge erroneously granted a Batson challenge and then found that all the challenges evidently had been granted to the defense counsel in that case. And yet under those conditions, it was okay because the evidence was overwhelming and there was no prejudice to the defendant in the way the jury was constituted. But what we have here is a situation where because of the way the ground rules were set in the jury selection process in Lindsay's case, one of the challenges was taken right out from under the defense counsel. And as I said at the beginning, that there was a relationship also between the grants of the challenge for cause on the part of jurors 8 and 10, Ms. Gomez and Ms. Nacor, that were granted by the judge. The fact that the judge did not ask enough questions of those jurors to establish that they could be fair and impartial regardless of their emotional feelings towards law enforcement sent a message to the 12 in the box that those types of responses were not acceptable to an unbiased juror. In other words, the fact that somebody might have a predisposition to disbelieve a certain type of witness or have had a bad experience or a bad perception of law enforcement in the past was enough to say that these jurors were not qualified to sit as jurors. So the remaining 12 that are there who are witnessing that, now Mr. Lindsay only has the opportunity to use 9 out of his 10. The whole purpose of the peremptory challenge is to deal with the uncertainties of the veneer where you can't rise to the level for cause. So, better... Thank you. Thanks. We'll go to the final... We've got two more matters. Not just one, it's consolidated. We've got two and one.
judges: Pregerson, Nelson D. W., Ikuta